(C. D. 406)

D. C. ANDREWS & Co. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 9, 1940)

*Henry L. Ziegel* for the plaintiffs.

*Charles D. Lawrence,* Acting Assistant Attorney General (*Daniel I. Auster,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges; TILSON J., dissenting

KINCHELOE, Judge: The subject matter of this protest consists of 10 cases of merchandise invoiced as No. 1 Linen Gilling Twine, which was assessed for duty by the collector as linen yarn, at 35 per centum ad valorem, under paragraph 1004 (a) of the Tariff Act of 1930, reading as follows:

PAR. 1004. (a) Single yarns, of flax, hemp, or ramie, or a mixture of any of them, not finer than sixty lea, 35 per centum ad valorem; * * *.

Duty appears to have been assessed on a total value of £953 9s. 0d. The protest is against the exaction of duty on such value, it being claimed by the plaintiffs in their protest that the merchandise had been erroneously described on the invoice as No. 1 Linen Gilling Twine instead of No. 3, which is a lower-priced twine, and should only have been assessed on a total value of £631 11s. 4d. Such facts seem to be borne out by the appraiser's report (exhibit 2), as well as by the testimony introduced by plaintiffs, and are in fact conceded by the Government. The fact remains, however, that the merchandise was invoiced, entered, and appraised at the same value, namely £953 9s. 0d., and the protest filed by plaintiffs makes but one claim, and that is that the assessed value of the imported merchandise should be £631 11s. 4d. instead of £953 9s. 0d. The protest does not in any way claim a different classification of the merchandise, for which provision is made by section 514 of the Tariff Act of 1930. The merchandise is still dutiable as linen yarn under said paragraph 1004 (a), irrespective of its value. It will therefore be seen that the only question raised by this protest is purely one of the proper dutiable value of the imported merchandise. In other words, the protest simply claims in effect that yarn of the quality of that imported is of a less value than that upon which duty has been assessed.

For such determination plaintiffs should have taken an appeal to reappraisement under the provisions of section 501 of said act of 1930. In seeking relief by the filing of a protest under said section 514, the importers have clearly mistaken their remedy. Note *Gerhard & Hey Co. v. United States*, 22 C. C. P. A. 655, T. D. 47634. This has been the rule in customs cases for a great many years, as will be seen by the more recent decision of Judge Brown in the case of *T. S. Kennedy Co. v. United States*, 2 Cust. Ct. 404, C. D. 165, from which we quote as follows:

The customs judicial review is very broad and liberal but this distinction between value cases, which arise on appeal from the local appraiser's finding of customs value, and protest cases contesting the rate and amount of duty taken by the collector on liquidation, has existed not only since this court was created in 1890, but goes back to the beginnings of the Government when the common-law action in the State court against the United States collector of customs was the customs judicial remedy for recovering customs taxes claimed to have been illegally collected. This distinction must, therefore, continue to be observed.

For the reasons stated we are constrained to dismiss this protest, which we hereby accordingly do. Judgment will be rendered accordingly.

DISSENTING OPINION

TILSON, Judge: I am compelled to disagree with the conclusion reached by my associates because of my conviction that this protest does not in any way relate to any question of appraisement or the value of the merchandise, as will hereinafter be more fully shown.

The pertinent part of the protest reads as follows:

This shipment was entered in accordance with the description and prices shown on Belfast Ireland Consular Invoice #5886 dated October 30, 1936. This invoice described the contents as No. 1 Linen Gilling Twine and the price was based on that type of twine, which figured £953–9–0 for the entered value.

Information has been received since the above mentioned entry was filed, that the shippers erroneously described this shipment as No. 1, and it actually consists of No. 3 Linen Gilling Twine which is a lower priced twine. Corrected Consular Invoice No. 6230, dated at Belfast on November 13, 1936 has been received from the shipper, to substantiate the error, and by using the figures shown on this corrected invoice the entered value would figure £631–11–4.

We therefore protest the assessment of duty based on the original entered value of £953–9–0, as the twine entered under this entry was not of the No. 1 quality as invoiced, but was of the No. 3 quality as invoiced on the corrected invoice No. 6230 dated at Belfast on November 13, 1936.

It is perhaps true, as stated by my associates, that this protest does not, primarily, raise any question as to the classification of the merchandise, but it is a fact too well known and recognized to require citation here, that literally hundreds and thousands of cases come before the classification side of this court which do not directly raise any question of classification. This is true because section 514 of the

Tariff Act of 1930 provides not alone for the filing of a protest against the classification of merchandise by the collector, but also provides with equal clarity and forcefulness for the filing of a protest by an importer against "* * * all decisions of the collector, including the legality of all orders and findings entering into the same as to the * * * amount of duties chargeable, and as to all exactions of whatever character * * *."

While the protest in this case is not couched in the most precise, technical language, yet it requires no strained construction or stretch of the imagination to spell out of this protest the dissatisfaction of the importer with the decision of the collector as to the amount of duties chargeable, "and as to all exactions of whatever character." That is exactly what this protest does. In this connection the majority opinion is correct in stating that:

The protest does not in any way claim a different classification of the merchandise, for which provision is made by section 514 of the Tariff Act of 1930.

If said section made provision only for the filing of a protest against the classification of the collector, then I would be constrained to agree with my associates in this case. However, I wish to clearly point out that the language of said section 514 is not limited to protests against the classification of merchandise, but provides as well for the filing of a protest against all decisions of the collector, including the legality of all orders and findings entering into the same as to the amount of duties chargeable, and as to all exactions of whatever character. It is my view that the provision just quoted is just as vital and effective as the provision providing for the filing of a protest against the classification of merchandise, and no good reason occurs to me why the same should be ignored and disregarded in this case.

If this court does not have jurisdiction and authority to entertain a protest and grant relief in cases involving a decision of the collector, including the legality of all orders and findings entering into the same as to the amount of duties chargeable and as to all exactions of whatever character, then it might well be doubted that this court has jurisdiction and authority to entertain a protest and grant relief in a case involving a decision of the collector as to the classification of merchandise. These rights granted to the importer go hand in hand and one cannot be ignored and denied without ignoring and denying the other.

In order to have a complete understanding of this case and to make my position clear, it will be necessary to set out the facts rather fully. The merchandise was linen yarn. The first and original invoice described the merchandise as No. 1 Linen Gilling Twine. While the merchandise was still before the examiner of merchandise, and before this official had completed his action, a corrected invoice,

now marked collective exhibit 1, was received, and upon further investigation it was discovered that none of the merchandise described on the first invoice was No. 1 Linen Gilling Twine. Therefore the examiner amended his report, or made a new report on the merchandise, correctly describing the merchandise as No. 3 Linen Gilling Twine, and showing that no No. 1 Linen Gilling Twine had been received. This report correctly describing the merchandise for the information of the collector in classifying it, was placed with the invoice, entry, and other official papers and after approval by the appraiser was forwarded to the collector.

The importer or his agent was present at the office of the examiner and was informed of the original error and how it had been corrected by the report of the examiner, and was assured that in due time adjustment would be made on the entry. He was also informed that this error would be corrected at the collector's office. However, before these papers were received at the collector's office, the amended report of the examiner, correctly describing the merchandise, became detached, lost, or misplaced and was never received by the collector. Consequently the collector assessed duty on the merchandise as No. 1 Linen Gilling Twine, merchandise which was not included in this importation.

The liquidator who liquidated this entry testified that no corrected invoice was before him when he liquidated the entry and that the appraiser's corrected description of the merchandise was not with the papers when the entry reached him for liquidation; that if he had received with the papers such a report as Examiner Ladau made, he would have followed article 826 of the Customs Regulations of 1931. To use his own language:

I would have referred all the papers to the entry division for a new entry, for such action as they would advise. I would have returned that to the entry division so they could refund the money. They would cancel the entry and refund the money.

Q. That was not done in this case because of the absence of Mr. Ladau's report?—A. That is correct.

That is exactly what the importer, by this protest, asks this court to do. This is far from asking this court to appraise or reappraise the merchandise or to find a value for the same. To hold that jurisdiction to do this is not conferred upon this court by said section 514 is to deny jurisdiction conferred in plain and unambiguous language.

The evidence establishes that had Mr. Ladau's report, correctly describing the merchandise, been received with the other papers the collector would have refunded the estimated duties, returned the entry to the entry division, and required that a new entry be made covering the merchandise actually imported. That such a procedure

would not have been an appraisement of the merchandise or a finding of a value for the same is entirely clear. Such a procedure would have been a simple compliance with said article 826 of the customs regulations. No one could contend that said article requires or in any manner provides for an appraisement of merchandise or for the finding of a value for the same.

If said article 826 does not require or provide for the appraisement of merchandise or a finding of value for the same, and if the correction of this error at the time the papers were before the collector in compliance with said article 826 would not have amounted to an appraisement of the merchandise or a finding of value for the same, then certainly our action in directing the collector to now comply with said article 826 cannot be an appraisement of the merchandise or a finding of value for the same.

Article 826 of the Customs Regulations of 1931, so far as here pertinent, is as follows:

(b) When any article not corresponding with the description given in the invoice is found by the appraiser, *duties will be assessed on the goods actually found*, and, if the discrepancy appears conclusively to be the result of a mistake and not of an intent to defraud, no proceedings for forfeiture will be taken: *Provided, That when the entire shipment does not agree with the invoice a new entry should be required and the estimated duty paid on the original entry refunded on liquidation as in the case of a nonimportation.* [Italics mine.]

In this case "duties" have not been "assessed on the goods actually found" and by this protest the importer is seeking to have duties assessed on the goods actually found, rather than to have the merchandise appraised, or reappraised or a value found for the same. In my opinion said article 826 (b) was authorized and promulgated for the express purpose of correcting errors like the one with which we are now dealing.

In my opinion, therefore, we should sustain this protest to the extent of directing the collector to refund the duties assessed and collected and return the entry to the entry division to the end that a new entry be prepared covering the merchandise actually imported. As this case stands at the present time duty has been assessed and collected on merchandise which was never imported into this country, and the merchandise which was actually imported has never had any duty assessed and collected upon it.

With jurisdiction and authority vested in this court by said section 514 to render a decision and judgment correcting this error, and the facts all supporting the importer's contention, no reason appears why the same should not be done. In my opinion, the action of my associates is a refusal to exercise the jurisdiction and authority clearly conferred upon this court by said section 514. This is particularly true, when, as in this case, all the Government officials thoroughly

familiar with the facts who testified, in effect confessed judgment in favor of the importer. This evidence is further substantiated by the special report of the appraiser in answer to this protest, in evidence as exhibit 2, the pertinent part of which is as follows:

The merchandise subject of protest consists of linen yarn. The importer claims that instead of quality No. 1 as invoiced, quality No. 3 was received. Numerous and careful tests as to tensile strength of both qualities have been made indicating that the importer's claim is correct.

The claim of the importer in this protest appears to have been clearly understood by the appraiser, and was plainly stated by him to be: "The importer claims that instead of quality No. 1 as invoiced, quality No. 3 was received." This official also states that after numerous and careful tests of the merchandise it appears that the importer's claim is correct. It is clear from the above-quoted report of the appraiser that that official did not understand or construe this protest as asking for an appraisement of the merchandise or for a finding of value for the same. Nor is there any indication in this record that any of the customs officials, including the collector, was misled by this protest or that they considered the same as asking for an appraisement of the merchandise.

For the reasons hereinbefore stated I decline to join my associates in denying relief to the importer in this case.